IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

SONIA D. A.,

                        Plaintiff,

            v.                              Civil Action No.
                                            5:22-CV-0682 (LEK/DEP)


COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

─────────────────────────────────────

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                   DANIEL BRADY, ESQ.
250 South Clinton Street, Suite 210 HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.              GEOFFREY M. PETERS, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235



DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that she was not disabled at the

relevant times and, accordingly, is ineligible for the disability insurance

("DIB") and supplemental security income ("SSI") benefits for which she

has applied.  The matter has been referred to me for the issuance of a

report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern

District of New York Local Rule 72.3.  For the reasons set forth below, I

recommend a finding that the Commissioner's determination did not result

from the application of proper legal principles and is not supported by

substantial evidence.

I.    BACKGROUND

Plaintiff was born in November of 1966, and is currently fifty-six years

of age.  She was fifty-two years old on May 25, 2019, the date upon which

she allegedly became disabled.  Plaintiff measures four feet and eleven

inches in height, and weighed approximately one hundred and sixty-seven

pounds during the relevant period.  Plaintiff is divorced and reportedly lives

by herself in one portion of a two-family house located in Syracuse, New

York.

Plaintiff reports that she graduated from high school and obtained an

associate degree in human resources and business.  She worked most

recently as a customer service agent for an air conditioning company, but has also worked in the relevant past as a call center supervisor for a medical transportation service.

Plaintiff alleges that physically she suffers primarily from severe anemia with related vertigo and syncope, high blood pressure, and severe hot flashes following a total hysterectomy, as well as mental symptoms related to posttraumatic stress disorder ("PTSD"). As is relevant to her application for benefits, she treated for her impairments with Dr. Laura Martin at Family Care Medical Group, Dr. Navpriya Oberoi, Dr. Cathy Berry, Dr. Michael Kenney, Dr. James Woods, and other various sources at St. Joseph's Health Cardiology Associates, Cardiovascular Group of Syracuse, Hematology and Oncology Associates of Central New York, Crouse Hospital, the University of Rochester Menopause Clinic, and St. Joseph's Hospital Health Center.

At the initial administrative hearing related to her applications for benefits, held in January of 2021, plaintiff testified that she is limited in her ability to work as a result of severe sweating post-hysterectomy, syncope attacks, daily headaches, the effects of a possible stroke, and PTSD related to past traumatic events. She reported that her most recent job was impacted by her syncope events. She testified that, during those episodes,

she becomes dizzy and faints, and that they can happen at any time and are unpredictable, although when she feels one coming on, she needs to lie down.  The episodes last between five minutes and an hour-and-a-half, although she often needs two hours to lie down and recover afterwards. She stated that she uses a cane or a walker when ambulating in case she falls from a sudden syncope episode.

Plaintiff further testified that she has difficulty with short term memory and some speech slurring that has been present for multiple months, although it is not clear what the cause of those symptoms might be.  She also experiences severe sweating related to her hormones, which makes it difficult for her to do much and requires her to change her clothes often.  In addition, she suffers effects from PTSD in the form of fatigue, depression, anxiety, and flashbacks.  She does not like to be around groups of people. In terms of activities, plaintiff reported that she reads and spends time with her son when he comes over to her house.  Her son and a friend help her clean her house and cook for her, and children from the neighborhood take out her garbage.  She further reported that she does not drive much anymore because of her anxiety.

II.     PROCEDURAL HISTORY

A.     Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Titles II and XVI of the Social Security Act, respectively, on July 5, 2019, alleging disability due to PTSD, vertigo, severe anemia, high blood pressure, and syncope. Administrative Law Judge ("ALJ") Elizabeth W. Koennecke held administrative hearings to address plaintiff's applications for benefits on January 26, 2021, and July 12, 2021, following which she issued a decision on July 22, 2021, finding that plaintiff was not disabled prior to July 19, 2021, and therefore is not entitled to the benefits for which she had applied for the period prior to that date, but is entitled to benefits as of that date. On April 28, 2022, the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the decision, making that decision the final determination of the Commissioner.

B.    The ALJ's Decision

In her decision, ALJ Koennecke applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff has not engaged in substantial gainful activity during the relevant period.  ALJ Koennecke next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including anemia, syncope, and mental diagnoses as variously characterized.  As part of her step two finding, ALJ

Koennecke also found that plaintiff's alleged obesity, hypertension, hysterectomy, foot pain, hives, COVID-19 infection, and mild degenerative joint disease of the right shoulder do not constitute severe impairments, while her alleged cerebrovascular accident/stroke and headaches have not been established as medically determinable impairments during the relevant period.

At step three, ALJ Koennecke examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 4.02, 7.18, 12.04, 12.15, and 12.00 in general.

ALJ Koennecke next surveyed the available record evidence and determined that plaintiff retains the residual functional capacity ("RFC") to perform a range of work at the light exertional level, as defined by the controlling regulations, with the following exceptions:

> she can never climb ladders, ropes, and scaffolds, and cannot have concentrated exposure to heights, moving mechanical parts, or extremes of heat. She retains the ability to understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks and regularly attend to a routine and maintain a schedule. She can handle simple,

repetitive work-related stress, in that she can make occasional decisions directly related to the performance of simple tasks, in a position with consistent job duties that does not require the person to supervise or manage the work of others. She should avoid work requiring more complex interaction or joint effort to achieve work goals and she can tolerate superficial contact with the public.

ALJ Koennecke went on to step four and found that plaintiff is unable to perform any of her past relevant work. The ALJ then proceeded to step five and, after eliciting testimony from a vocational expert, found that plaintiff remained able, until she experienced a change of age category on July 19, 2021, to perform available work in the national economy, citing the representative positions of office helper, marker II, and mail clerk.  Based upon these findings, ALJ Koennecke determined that plaintiff was not disabled at any time prior to July 19, 2021, but that she became disabled as of that date as a result of a change in age category pursuant to Medical-Vocational Guidelines ("Grid") Rule 202.06, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.06.[1]

C.    This Action

---

[1]    Grid Rule 202.06 applies to persons of advanced age, defined as age 55 and older. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(f).  While plaintiff did not reach the age of 55 until November of 2021, ALJ Koennecke in essence deemed it appropriate to advance plaintiff to that higher age category effective July 19, 2021, considering she was at that time within six months of such age change.  Administrative Transcript at 29-30.

Plaintiff commenced this action on June 27, 2022.[2]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ erred in her assessment of the various opinions in the record, specifically highlighting errors the ALJ purportedly made in choosing not to rely on opinions provided by consultative examiner Dr. Kalyani Ganesh, treating physician Dr. James Woods, treating physician Dr. Michael Kenney, consultative examiner Dr. Corey Anne Grassl, consultative examiner Dr. Jeanne Shapiro, and treating nurse practitioner ("NP") Julie Andrews.  Dkt. No. 11.

Oral argument was conducted in this matter, by telephone, on July 27, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.

---

[2]   This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

1998).  Where there is reasonable doubt as to whether an ALJ has applied

the proper legal standards, the decision should not be affirmed even

though the ultimate conclusion reached is arguably supported by

substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If, however, the correct legal standards have been applied, and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision will withstand judicial scrutiny regardless of

whether the reviewing court might have reached a contrary result if acting

as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.

Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must

be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency

11

must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

Plaintiff's claim in this proceeding centers upon the ALJ's evaluation of several of the opinions in the record, involving both her physical and mental limitations. Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the

case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[3] and consistency[4] of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

---

[3]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[4]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

Having carefully reviewed the ALJ's decision and the record in this case, I recommend a finding that she committed errors in assessing certain of the opinions highlighted by plaintiff in that she failed to appropriately apply and consider the applicable regulatory factors, and her discussion of the evidence within the decision hampers the ability to otherwise meaningfully review her findings.[5]

a.   The Opinion of Dr. James Woods

Plaintiff argues that the ALJ erred in finding the opinion from treating physician Dr. Woods to be unpersuasive.  In a form dated December 28, 2020, Dr. Woods opined that, due to menopausal symptoms such as constant hot flashes, plaintiff can sit for only five minutes at one time and less than two hours total, stand for only ten minutes at one time and stand or walk for less than two hours total, requires use of a cane "for support due to stroke," can rarely lift even less than ten pounds, occasionally use her hands, rarely twist, bend, stoop, crouch, squat or use her arms and fingers, and never climb.  Administrative Transcript ("AT") 1289-90.[6]  Dr. Woods opined that she would require unscheduled breaks every five-to-ten

---

[5]   Although I do not discern material errors in the assessment of the other opinions of record that are not mentioned below, on remand all such opinions should be reassessed in accordance with the controlling regulations.

[6]   The administrative transcript is found at Dkt. No. 10, and will be referred to throughout this decision as "AT __."

minutes due to hot flashes, would be off-task more than twenty percent of the workday, and could be predicted to be absent from work more than four days per month.  AT 1291.  Dr. Woods noted further that plaintiff is unable to control her hot flashes and "doesn't know the severity," as well as that a hysterectomy did not provide relief for her symptoms.  AT 1291-92.  He also stated that "stroke has impaired her ability to function properly."  AT 1292.

The ALJ found this opinion to be unpersuasive, noting that Dr. Woods appears to attribute these limitations to plaintiff's hot flashes while also referencing plaintiff's reported stroke and sleep problems.  AT 27.  The ALJ reasoned that, "[g]iven that hot flashes are unlikely to cause exertional limitations, it appears likely that the limitations are due to the claimant's reported stroke history as nothing in the single physical examination of the claimant in the record would support this."  *Id.*  ALJ Koennecke pointed out that, according to the record, plaintiff has no history of having suffered a stroke, and noted that she has reported that her sleep is good, and that "[w]hile the claimant may experience hot flashes, this will not limit her exertional activities."  *Id.*  The ALJ nonetheless limited plaintiff to simple repetitive tasks based on reports of sleep issues.  *Id.*

Contrary to plaintiff's argument that the ALJ erred in finding that

opined limitations appeared to likely be based upon plaintiff's reported stroke, Dr. Woods' own explanations within that opinion show that he did indeed consider plaintiff's reported stroke to some extent.  AT 1291-92. Specifically, as was discussed above, Dr. Woods based the limitation regarding cane use on plaintiff's reports of having had a stroke, and further noted that a stroke had impaired her ability to function properly.  *Id.* Accordingly, although it would certainly be fair to say that much of Dr. Woods' opinion was more likely based on her menopausal symptoms rather than her stroke, it was clearly not unreasonable for the ALJ to conclude that Dr. Woods did rely to some degree on plaintiff's reported stroke.  Nor was it untenable for the ALJ to reject limitations to the extent they were premised on such reports, as the medical evidence makes clear that there is no evidence that plaintiff actually suffered a cerebrovascular event or stroke, with MRI testing from neurologists showing the contrary. AT 1024.  This is not a case of the ALJ substituting her own lay opinion for that of a medical source, as plaintiff argues, but rather the ALJ relying on contrary evidence from other medical sources who had actually assessed whether plaintiff had in fact suffered a stroke.

The same conclusion is not necessarily warranted with regard to the ALJ's assessment of Dr. Woods' opinion from the perspective of plaintiff's

menopausal symptoms and hot flashes.  Dr. Woods' opinion is very clearly premised primarily upon those menopausal symptoms, and specifically her hot flashes.  The ALJ found that plaintiff's history of a hysterectomy with resultant menopausal symptoms of sweating and hot flashes did not constitute a severe impairment, and plaintiff has not directly challenged that determination.  AT 18.  Plaintiff instead argues that the ALJ "supplanted Dr. Woods' medical expertise" in deciding that hot flashes could not cause exertional limitations."  Dkt. No. 11, at 17-18.

In finding Dr. Woods' opinion concerning plaintiff's exertional limitations in particular to be unpersuasive, the ALJ in essence relied upon her belief that hot flashes cannot cause exertional limitations.  *See* AT 27 ("While the claimant may experience hot flashes, this will not limit he [sic] external activities.").  The ALJ notably did not cite evidence showing that plaintiff continued to engage in significant exertional activities despite her hot flashes, but instead seemed to rest her conclusion on her personal belief that hot flashes cannot, under any circumstances, cause restrictions on exertional activities.  Such a conclusory finding is therefore not based on medical evidence and instead appears to represent an improper substitution of the ALJ's lay opinion for that of the medical sources.  *See* *Cathy G. v. Kijakazi*, 21-CV-0823, 2022 WL 11134065, at *6 (N.D.N.Y. Oct.

19, 2022) (Baxter, M.J.) ("Although an ALJ may make common sense judgments where the medical evidence shows minor impairments, the ALJ may not substitute his or her own lay opinion for that of a medical professional when the record contains complex findings or indicates severe impairments."); *Michael T. v. Comm'r of Soc. Sec.*, 19-CV-0956, 2021 WL 681287, at *10 (W.D.N.Y. Feb. 22, 2021) ("It is well settled that an ALJ cannot arbitrarily substitute his own lay opinion for competent medical opinion evidence.").  Although I do not see any clear, explicit support for Dr. Woods' specific opined exertional limitations, the record undeniably does contain consistent reports to providers that plaintiff experienced severe sweating that interfered with her sleep and daily activities, as well as trials of multiple different hormonal therapies and referral to a specialist clinic in Rochester, and reflects that none of those measures appears to have resolved or improved plaintiff's hot flashes and sweating.  *See e.g.*, AT 564, 986, 990, 1007, 1111, 1115, 1120, 1123, 1126, 1305, 1311.  On one such occasion, during a visit in August of 2020, it was noted that plaintiff appeared to be visibly sweating while at the appointment.  AT 1126.  The ALJ did not explain how this evidence is or is not consistent with any of the limitations opined by Dr. Woods.  I further note that the ALJ stated only that hot flashes are unlikely to cause exertional limitations; she did not address

18

whether such symptoms, resulting from menopause and her hysterectomy, might cause other limitations found in Dr. Woods' opinion, including the opined off-task time and absences from work.  AT 27.  Because the ALJ herself appears to have accepted the fact that plaintiff experiences sleep issues as a result of her sweating, her failure to explain how the evidence would or would not support the nonexertional limitations opined by Dr. Woods in the context of her hot flashes leaves a gap in her analysis that prevents meaningful review of her ultimate conclusions regarding that opinion.

The fact that the ALJ found that plaintiff's hysterectomy with associated menopausal symptoms does not constitute a severe impairment does not provide sufficient explanation to support the ALJ's findings regarding Dr. Woods' opinion.  Although the ALJ concluded that this impairment does not impose more than minimal limitation on plaintiff's work-related functioning, her only explanation concerning that finding was to mention that plaintiff underwent a hysterectomy in June of 2019 and that, following that surgery, she complained of menopausal symptoms, primarily sweating and hot flashes.  AT 18.  This brief notation does not serve as a functional substitute for a consideration of the relevant factors related to assessing opinion evidence, nor does it even serve to explain the severity

19

finding in any significant way, particularly in light of the evidence discussed above.

Because it does not appear that the ALJ properly assessed the required regulatory factors of consistency and supportability related to Dr. Woods' opinion regarding plaintiff's menopausal symptoms and their effect on her work-related functioning, I find that the ALJ committed an error that prevents the court from meaningfully reviewing whether her conclusions are supported by substantial evidence.  I note additionally that this error cannot be considered to be harmless because Dr. Woods is the only source to have provided an opinion addressing the impact of plaintiff's post-hysterectomy symptoms specifically.  Notably, although Nurse Andrea Arore and Dr. Cathy Berry authored a similar form related to the effects of those symptoms, they did not complete any of the relevant sections regarding resulting limitations, and noted only that no treatments had yet improved plaintiff's hot flashes and that she needs to avoid extreme heat. AT 1293-95.  The fact that they left the form blank cannot be taken as contrary evidence to the effect that plaintiff has no limitations in those areas, specifically as they stated that they are "unsure of limitations" resulting from her symptoms.  AT 1296.  For all of the above reasons, I recommend that this matter be remanded for a proper consideration of Dr.

Woods' opinion and the effects of plaintiff's post-hysterectomy symptoms.

b.   The Opinion of Dr. Corey Anne Grassl

Consultative examiner Dr. Grassl conducted an assessment of

plaintiff's mental condition on January 28, 2020, after which she opined that

plaintiff appears to have no limitation in understanding, remembering and

applying simple directions and instructions, using reason and judgment to

make work-related decisions, maintaining personal hygiene and

appropriate attire, and being aware of normal hazards and taking

appropriate precautions.  AT 890-91.  She further opined that plaintiff is

mildly limited in her ability to understand, remember and apply complex

directions and instructions and moderately limited in her ability to sustain

an ordinary routine and regular attendance at work, but markedly limited in

her abilities to interact adequately with supervisors, coworkers and the

public, sustain concentration and perform tasks at a consistent pace, and

regulate emotions, control behavior and maintain well-being.  AT 890-91.

The ALJ found this opinion to be "less persuasive," reasoning that

plaintiff is generally independent in her activities of daily living and has

friends and family to support her.  AT 26.  The ALJ also stated that "[w]hile

moderate limitations are supported, moderate limitations are not," a

statement that contains what appears to be a typographical error, the

assumption from the context being that the ALJ intended to state that *marked* limitations are not supported.  *Id.*

The ALJ's analysis of this opinion is also facially deficient, as she seemingly failed to assess the required factors of consistency and supportability in any depth.  Indeed, the ALJ did not discuss whether or to what extent Dr. Grassl's opinion of marked limitations is inconsistent with either Dr. Grassl's own examination findings[7] or the other mental health treatment evidence in the record, but instead cited only to the fact that plaintiff is "generally independent" in her activities, while also acknowledging, somewhat conversely, that plaintiff has friends and family to support her.  AT 26.  When discussing plaintiff's reported activities earlier in the decision, the ALJ stated that plaintiff "is able to attend to her personal care and grooming, as well as to cook, clean, do laundry, and shop," and additionally can manage money, use the internet, and watch television.  AT 25.  The ALJ again also noted that plaintiff has friends and an adult son who are "supportive," but failed to acknowledge plaintiff's reports that those persons aid her with her activities, including cooking and cleaning for her at times, activities which the ALJ had assumed plaintiff performs

---

[7]    The ALJ did recite the content of Dr. Grassl's examination findings earlier in the decision, noting that they are generally normal other than observations of stuttering, slurred speech, a flat affect, and estimated borderline intellectual functioning.  AT 24.

independently.  AT 25.  The ALJ lastly noted that plaintiff reported to her

mental health provider that her son took gym equipment to her house in

January of 2021 and that, in March of 2021, she was looking forward to a

trip to "the islands" scheduled for the following December.[8]  AT 25.   The

ALJ's assessment of the plaintiff's daily activities does not appear to take

proper consideration of the full range of activities – and limitations therein –

that plaintiff actually reported, and, given that such activities are the sole

basis upon which the ALJ rejected the marked limitations in this opinion,

such reasoning cannot constitute substantial evidence to support the ALJ's

conclusion.

Further, the ALJ's discussion of the mental health evidence in this

case does not appear to be sufficient to overcome her failure to explicitly

address the factors of consistency and supportability as to this opinion.

The ALJ discussed some of the evidence, but generally noted instances

when plaintiff has denied mental health symptoms, and where examination

findings were normal.  AT 24.  There are many instances, however, of

examinations throughout the record during which plaintiff was observed to

have an anxious mood or constricted affect.  *See, e.g.*, AT 623, 824, 827,

---

[8]      I note that, assuming such trip took place, it would have occurred after the date upon which the ALJ found plaintiff to be disabled.

1236-37, 1268-69, 1281, 1344-45, 1355-56, 1372-73, 1383-84, 1394-95.

Although it is true that an ALJ need not discuss every piece of evidence in

a record in order to show that it was considered, *Brault,* 683 F.3d at 448,

the ALJ's discussion of the evidence in this case raises questions of

whether she did indeed appropriately assess all of the evidence and

prevents me from gleaning whether her discussion of the record evidence

can provide a substitution of her failure to consider the relevant regulatory

factors when assessing Dr. Grassl's opinion.

Based on the foregoing, I recommend a finding that the ALJ erred

when assessing the opinion from Dr. Grassl, and the Commissioner has

not shown that her findings in that respect are supported by substantial

evidence.

### c.    The Opinion of Dr. Jeanne Shapiro

On October 2, 2019, consultative examiner Dr. Shapiro examined the

plaintiff and opined that she appears to have no limitations in her abilities to

understand, remember and apply simple directions and instructions, use

reason and judgment to make work-related decisions, maintain personal

hygiene and wear appropriate attire, and be aware of normal hazards and

take appropriate precautions.  AT 861-62.  She further opined that plaintiff

has a mild limitation in her ability to understand, remember and apply

complex directions and instructions, a mild-to-marked limitation in

sustaining concentration and performing tasks at a consistent pace

depending on her level of anxiety, a moderate limitation in sustaining an

ordinary routine and regular attendance at work, and moderate-to-marked

limitations in interacting adequately with supervisors, coworkers and the

public and regulating emotions, controlling behavior, and maintaining

wellbeing. *Id.*

The ALJ found this opinion to be somewhat persuasive, noting that

"the claimant's reported activities, most notably her social contacts and

independent activities of daily living, support no more than moderate

limitation in interactions with others and in concentration[,] persistence[,]

and pace."  AT 26.  I find this rationale to be deficient for many of the same

reasons that were identified previously with regard to Dr. Grassl's opinion.

In particular, the ALJ did not clearly consider the full range of the limitations

in plaintiff's daily activities that she actually reported.  Further, the ALJ

relied on the fact that plaintiff has a relationship with her son and a friend

as a basis for finding she has no more than moderate restriction in her

ability to interact with others, but failed to explain how she balanced that

fact with plaintiff's other reports that she does not do well around crowds of

people or the fairly consistent notations on examinations, as discussed

above, that plaintiff was anxious during visits with providers. Given that the ALJ has again failed to indicate her consideration of the factors of supportability and consistency as to this opinion, I find that the ALJ's assessment of this opinion is also not supported by substantial evidence, and recommend that this error also be found to warrant remand.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination did not result from the application of proper legal principles and is not supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 16) be DENIED, the Commissioner's decision be VACATED, and this matter be remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>FAILURE TO OBJECT</u>

TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE

APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated:    August 3, 2023
          Syracuse, NY                          _____

                                                DAVID E. PEEBLES
                                                U.S. Magistrate Judge